# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TEDDY MENDOZA**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 22-1241 (RJL)** |
| | ) | |
| **WASHINGTON METROPOLITAN** | ) | |
| **AREA TRANSIT AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

(June 28, 2024) [Dkt. #33]

In this negligence action, plaintiffs Teddy Mendoza and the Estate of Valerie Hale allege that they were injured due to the negligent operation of a Washington Metropolitan Area Transit Authority ("WMATA") train in June 2019. Pending before the Court is WMATA's Motion for Summary Judgment [Dkt. #33]. Because plaintiffs have produced no evidence on the applicable standard of care for their negligence claims, the Court will **GRANT** WMATA's Motion for Summary Judgment.

## I.    BACKGROUND

On June 3, 2019, Teddy Mendoza ("Mendoza") and Valerie Hale ("Hale") were working as contractors tasked with guarding boxes of money collected from WMATA stations and loading them onto a non-passenger WMATA train. Compl. [Dkt. #1-2] ¶¶ 6–7. After the collection was completed at Metro Center Station, the train began to leave the platform before the doors were shut. Def. WMATA's Mot. for Summ. J. [Dkt. #33]

1

("Mot. for Summ. J."), Ex. 3; Pls.' Opp'n to Def.'s Mot. for Summ. J. [Dkt. #35] ("Pls.'

Opp'n"), Ex. A ("Kupka Dep.") at 14:14–15:5.  Mendoza attempted to board the train as

it began pulling away from the platform, and the right side of his body was hit by the

open door frame as the train accelerated.  Mot. for Summ. J., Ex. 3 at 1:48.  Mendoza

alleges that he "suffered injuries when the sudden acceleration of the train forced his

body against the open door in the WMATA train."  Compl. ¶ 11.  The second contractor,

Hale, originally alleged that she "suffered injuries when the doors closed on her body and

when she was thrown about by the sudden acceleration."  Compl. ¶ 13.  However, the

incident was recorded by closed-circuit television ("CCTV") cameras inside the station,

and the uncontroverted video evidence demonstrates that Hale did not come into contact

with the train doors but rather had stepped safely inside the train before the doors closed

and the train began to move.  Mot. for Summ. J., Ex. 1 at 1:46.  Plaintiffs now concede

that Hale was not caught in the doors of the train, but they maintain that she was injured

when she was "thrown about by the sudden acceleration of the WMATA train."  Pls.'

Opp'n at 8.

   Plaintiffs Mendoza and the Estate of Valerie Hale[1] filed suit against WMATA on

March 28, 2022, alleging that WMATA was liable for the negligent operation of the

train.  Compl. ¶¶ 35–36.  Following the close of discovery, WMATA moved for

summary judgment.  *See* Mot. for Summ. J.  WMATA argues, *inter alia*, that plaintiffs

cannot prove the duty and breach elements of negligence because they have not proffered

---

[1] Hale passed away due to unrelated causes on December 11, 2019, and her estate brought the lawsuit on her behalf.  Compl. ¶ 34.

expert testimony establishing the national standard of care for train operation, as required by D.C. law. Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 6–8; *see also* Def. WMATA's Statement of Material Facts in Supp. of Mot. for Summ. J. ("Statement of Material Facts") ¶ 1. Plaintiffs oppose WMATA's request for summary judgment, arguing that expert testimony is not required. Pls.' Opp'n at 6–8. WMATA filed a reply, and the motion is now ripe for the Court's review. *See* Def. WMATA's Reply to Pls.' Opp'n to Def.'s Mot. for Summ. J. [Dkt. #37].

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant can satisfy its initial burden of demonstrating that there is no genuine dispute of material fact by "citing to particular parts of materials in the record" or by showing "that [the non-movant] cannot produce admissible evidence to support" the "presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). If, after adequate time for discovery, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the entry of summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23 (quoting Fed. R. Civ. P. 56); *see also Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015) ("[D]efendant need

only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in her favor on one or more essential elements of her claim.").

**III.   ANALYSIS**

To establish a claim of negligence under D.C. law, "the plaintiff has the burden of proving by a preponderance of the evidence the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury." *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006) (quoting *District of Columbia v. Wilson*, 721 A.2d 591, 597 (D.C. 1998)).  To establish the standard of care, a plaintiff must put on expert testimony if the subject in question is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (quoting *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987)).  Conversely, expert testimony is not required if the alleged negligent act is "within the realm of common knowledge and everyday experience." *Id.* (quoting *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982)).  However, "[t]he D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge." *Briggs v. WMATA*, 481 F.3d 839, 845 (D.D.C. 2007) (collecting cases).  Indeed, "[t]he case law indicates that the 'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required." *Id.*

Because the standards governing the operation of a train are "distinctly related to an occupation that is 'beyond the ken of the average layperson,'" an expert is required to establish the national standard of care. *Frick v. Amtrak*, 54 F. Supp. 3d 1, 4 (D.D.C. 2014) (quoting *Robinson v. WMATA*, 941 F. Supp. 2d 61, 67 (D.D.C. 2013)) (concluding that expert testimony was required in a negligence action against Amtrak in which plaintiff alleged that he was injured due to the train's excessive speed); *see also Robinson*, 941 F. Supp. 2d at 67 (similarly concluding that expert testimony was required to establish the standard of care for public transit bus operators).  Plaintiffs do not dispute that they have not designated an expert witness, but they contend that WMATA's rules and regulations can be used to establish the standard of care.  Statement of Material Facts ¶ 1; Pls.' Opp'n at 7.  Specifically, they point to the fact that the operator of the train bypassed the door interlock mechanism on the day of the incident without receiving authorization from the interlock operator, as required by WMATA's internal policies. Pls.' Opp'n at 7; *see also* Pls.' Opp'n, Ex. B ("Randolph Dep.") at 13:5–17:7.  However, an agency's internal policies and procedures "are insufficient in themselves to establish the standard of care." *Robinson*, 941 F. Supp. 2d at 68.  "While a plaintiff's expert may point to rules or guidelines set forth in a defendant's own guidebook or its standard operating procedures as evidence of the standard of care, the expert must adequately demonstrate that those rules or guidelines reflect or embody a national standard of care." *Id.*  Otherwise, it would create a "perverse incentive" for agencies to write their policies and procedures in a way to limit civil liability, rather than striving for increased safety

5

standards. *Briggs*, 481 F.3d at 848 (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 435 (D.C. 2000)).

In attempting to resist this conclusion, plaintiffs point to *WMATA v. O'Neill*, 633 A.2d 834 (D.C. 1993), as an example of a case in which WMATA's internal procedures were utilized to establish the standard of care without the use of expert testimony. Pls.' Opp'n at 7. However, in *O'Neill*, the alleged negligent conduct related to a bus driver's response to the disruptive and violent conduct of passengers on the bus, not the operation of the vehicle. 633 A.2d at 835–36. The D.C. Court of Appeals therefore concluded that it was "not beyond the ken of an average juror" to apply WMATA's safety rules regarding what a driver was obligated to do when a passenger was being harassed or threatened by another rider. *Id.* at 841. In contrast, the operation of a door interlock mechanism on a WMATA train is not within the realm of common knowledge and everyday experience. *O'Neill* is therefore inapposite, and plaintiffs' failure to designate an expert to establish the national standard of care for train operation is fatal to their negligence claims.

## IV.   CONCLUSION

Because plaintiffs have failed to come forward with any evidence of the applicable standard of care for their negligence claims, WMATA's Motion for Summary Judgment will be GRANTED. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge